IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**D.M., et al.,**

    **Plaintiffs,**

v.

**Butler County Board of Mental
Retardation and Developmental
Disabilities, et al.**

    **Defendants.**

Case No. 08-399
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge King

## OPINION AND ORDER

This matter is before the Court on Defendants Butler County Board of Mental Retardation and Developmental Disabilities ("Board") and Empowering People, Inc.'s ("EPI") Motions to Dismiss under Fed. R. Civ. Proc. 12(b)(6) and (7). (Docs. 14, 15).

### I.

Plaintiffs are current or former residents of the Fairfield Center, an intermediate care facility for the mentally retarded ("ICF/MR") located in Butler County, Ohio.[1] Plaintiffs' Amended Complaint asserts claims against the Board under Title II of the Americans with Disabilities Act ("ADA"), and against the Board and EPI under the Rehabilitation Act, Section 504. 42 U.S.C. §12131; 29 U.S.C. §794. The Amended Complaint seeks an Order directing Defendants "to assess all residents of Fairfield Center to determine if they wish to move into the

---

[1]Although Plaintiffs' Amended Complaint contains class action allegations, Plaintiffs have not moved for class certification.

1

community and, if so, to determine the most appropriate community setting." (Doc. 7, Am. Compl., Prayer for Relief).

The Board owns the Fairfield Center, which houses approximately 110 individuals. (Id. at ¶¶ 1-2). EPI has leased and operated the facility since January 1, 2008, under a license from the Ohio Department of MR/DD.

## *Martin* Class Action

The facts and legal posture of the present case mirror that of *Martin v. Taft*, Case No. 89-CV-0362, 222 F.Supp. 2d 940, 967 (S.D. Ohio 2002), wherein this Court certified a class of "all mentally retarded or developmentally disabled Ohioans who are, or will be, in need of community housing and services which are normalized, home-like and integrated. . . ." (Consent Order, Doc. 15-9).[2] The *Martin* class action sought to compel the state of Ohio and its agencies, the Ohio Department of Job and Family Services ("ODJFS") and the Ohio Department of Mental Retardation and Developmental Disabilities ("ODMRDD") (collectively, the "state agencies"), to

---

[2] In support of their Fed. R. Civ. Proc. 12(b)(6) and (7) motions, Defendants rely upon public documents filed in *Martin*. The Court properly considers such materials in ruling on a Rule 12(b)(6) motion, without converting the motion into one for summary judgment under Rule 56(c). *See Bentley v. Honeywell International Inc., et al.*, No. 03-CV-079, 2004 U.S. Dist. LEXIS 21019, *9-10 (S.D. Ohio Sept. 24, 2004); *Williams v. Allstate Ins. Co.*, No. 5:04-CV-2435, 2005 U.S. Dist. LEXIS 40799, *5 (N.D. Ohio April 19, 2005) (quoting *New England Health Care Employees Pension Fund v. Ernst & Young*, 336 F.3d 495, 502 (6th Cir. 2003)) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such a materials are public records or are otherwise appropriate for taking judicial notice. Courts have regularly taken judicial notice of proceedings in other courts of record, records and reports of administrative bodies, and EEOC determinations, thus the Court is well-supported in doing so in the present case.") (collecting cases, citations omitted). The Court does not consider Defendants' motions under the summary judgment standard, and has not considered materials attached or facts relied upon by Plaintiffs that are outside the pleadings, public records, or otherwise subject to judicial notice.

2

provide plaintiffs with a "choice of community based, integrated residential services."[3] (Id.)

There is no dispute that Plaintiffs fall squarely within the broad plaintiff class certified in *Martin*, and like the *Martin* class, Plaintiffs herein are represented by Ohio Legal Rights Service. Defendant Board was a member of a defendant class, comprised of all 88 county MR/DD boards (the "county boards"), which intervened four years into the *Martin* litigation. Specifically, the Ohio Association of County Boards of MR/DD moved to intervene on behalf of its members. The *Martin* plaintiffs class opposed the county boards' intervention, claiming that the boards' interests were represented by the state agencies, and that they would be bound by any ruling against the state agencies. (Doc. 15-13, Mem. in Opp. Mot. to Intervene). Relevant to this pending matter, the *Martin* plaintiffs asserted that:

> the County MR/DD Boards do not have sufficient interest in this litigation to be granted intervention as of right. . . . Ohio statutes and regulations make that role subject to the authority of Defendants . . . the Ohio Department of [MR/DD]. The rules which govern the county MR/DD boards are not written or promulgated by them, but instead those rules are promulgated by ODMR/DD. . . . Defendant ODMR/DD now licenses nearly all of the [ICFs/MR]. See R.C. 5123.19(b). . . . The authority of the county MR/DD boards is limited by the requirement to function within rules established by the Defendant ODMR/DD. . . . [M]ember county MR/DD boards certainly play a significant role in the *implementation* of residential policy and rules, it is ODMR/DD that *exercises rulemaking authority for and regulates* the county MR/DD boards.

(Id. at pgs. 5-7) (emphasis in original). Further, the plaintiff class argued, "[i]f [Defendants] agree to or are ordered to change rules governing the provision of residential services by county MR/DD boards, then when those rules are promulgated those county boards will indeed be bound by that outcome and can indeed by *(sic)* compelled to implement those rules." (Id.)

---

[3]Discussion of the merits of *Martin*, and a substantive analysis of the laws governing the state's care, treatment, and placement of disabled individuals is contained in this Court's Opinion on the parties' motions to dismiss and for summary judgment, issued September 19, 2002. *Martin v. Taft*, 222 F.Supp. 2d 940 (S.D. Ohio 2002).

3

Subsequently, the Court granted the county boards' motion to intervene and certified the class of defendants. (Doc. 15-6, Order). In 2000, the *Martin* class reached a settlement with the county boards. (Doc. 15-7, Settlement Agreement). The county boards were dismissed based on the parties' agreement that the boards would be represented by the state defendants, and would be bound by the outcome of the *Martin* litigation. (Id.)

Based upon the Butler County MR/DD Board's direct involvement in *Martin*, and the fact that Plaintiffs herein are members of the *Martin* class, Defendants now move to dismiss, asserting that Plaintiffs' claims are barred by the doctrine of *res judicata*. The Board also contends that the action must be dismissed for failure to join necessary parties, ODJFS and ODMRDD, and EPI moves to dismiss for failure to state a claim under the Rehabilitation Act.

In opposing Defendants' motions to dismiss, Plaintiffs attempt to distinguish their case factually, while conceding that their claims arise under the same laws and seek the same relief as in *Martin*. Plaintiffs maintain that, due to the income it receives from operating the Fairfield Center, the Butler County Board is uniquely suited to "fund community residential placements with local dollars" and its failure to do so violates the ADA and the Rehabilitation Act. (Doc. 21, Mem. in Opp., at pg. 4). The *Martin* case, on the other hand, involved the "state's failure to budget sufficient state matching funds for home and community based residential services." (Id.) According to Plaintiffs, Defendants are violating their independent obligations under the ADA and Rehabilitation Act by failing "to provide Plaintiffs with the most integrated community setting appropriate to their needs." (Id.)

After 18 years of litigation, the *Martin* case concluded on March 5, 2007, by this Court's approval and entry of a Consent Order, the terms of which included an allocation of the roles and

responsibilities between state agencies and county boards in implementing the parties' settlement. (Doc. 15-10, 11, Order Approving Class Settlement and Consent Order). The Order also implicates ICFs/MR by requiring that a certain number of individual option waiver slots be available to ICF/MR residents, and instructing the state agencies to survey ICFs/MR residents regarding their placement preferences. (Id.) The Court retained jurisdiction to enforce the Order through June 30, 2009. (Doc. 15-11, Consent Order).

If Plaintiffs contend that the Butler County MR/DD Board is not complying with the *Martin* settlement agreement and Consent Order, their remedy is to file a motion seeking to enforce the Consent Order. Otherwise, Plaintiffs' claims were or could have been litigated in *Martin*, and are therefore barred by the doctrine of *res judicata*.

## III.

### *Res Judicata Analysis*

Both parties rely on the Restatement (Second) of Judgments, §24, adopted by the Sixth Circuit in *J.Z.G. Resources Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996), describing "the doctrine of *res judicata* as extinguishing 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" The doctrine of res judicata includes two separate concepts: claim preclusion and issue preclusion. *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Under the doctrine of claim preclusion, a final judgment on the merits by a court of competent jurisdiction bars any subsequent litigation on the same claim between the same parties, or non-parties in privity, with respect to every ground for recovery asserted in the first proceeding, as well as every ground for recovery which the parties could have raised but did not.

5

*Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994). Non-parties may also be bound by a prior judgment if a party to the prior proceeding adequately represented the interests of the non-party. *See Hansberry v. Lee*, 311 U.S. 32, 43 (1940). Claim preclusion has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 1046 (1993); *Bittinger, et al. v. Tecumseh Products, et al.*, 123 F.3d 877, 880 (6th Cir. 1997); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).

Defendants contend that claim preclusion bars Plaintiffs' claims because they are identical to those actually litigated against the Board in *Martin*. To the extent they are distinguishable from *Martin*, Defendants contend that Plaintiffs' claims arise out of the same facts, and could have been raised against the intervening class of defendants in the previous litigation.

Plaintiffs do not dispute that they are *Martin* class members, or that the Consent Order in *Martin* constitutes a final decision on the merits. Rather, Plaintiffs contend that the Defendants were not parties to the Consent Order, are not bound by it, and are not in privity with the parties in *Martin*. Second, Plaintiffs assert that their claims arise out of "a different set of operative facts" such that there is no identity of claims. (Doc. 21, Mem. in Opp., at pg. 6).

As set out above, this lawsuit arises out of a dispute over the availability of resources for disabled residents of the Fairfield Center to transition out of the ICF/MR into integrated

community housing. (Am. Compl.). Plaintiffs seek deinstitutionalization and admit that "both *Martin* and this case involve the same overall concept of community integration." (Doc. 21, Mem. in Opp., at pg. 10). In fact, *Martin* and this case allege identical violations of the anti-discrimination provisions in the ADA and Section 504 of the Rehabilitation Act, namely, the failure of the respective defendants to fund and facilitate community placement of ICFs/MR residents. Based on the foregoing, the Court finds that there is an identity of claims between *Martin* and this case for purposes of claim preclusion analysis.

The remaining claim preclusion factor to consider is whether the Butler County MR/DD Board and EPI were parties, or are in privity with the parties, in *Martin*. The issue is complicated by the fact that, in order to intervene in *Martin*, the county boards asserted their independence from the state agencies. In opposing intervention, the *Martin* plaintiffs argued that the county boards were represented by the state agencies, and bound by any changes in the law or rules concerning deinstitutionalization. Now the parties' roles are reversed, with Plaintiffs maintaining that the Board has an independent community integration duty, and Defendants contending that they are at the mercy of the state agencies. Regardless of the posturing, the settlement agreement between the Board and the plaintiff class in *Martin* is determinative. The Board was both a party in *Martin*, and is in privity with the state agency defendants in *Martin* by agreeing to be represented by ODMRDD and ODJFS and to be bound by the judgment of the Court.

The Restatement (Second) of Judgments, §41, states: "A person who is not party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." Addressing privity in the context of *res judicata*, the Supreme Court in

*Richards v. Jefferson County*, 517 U.S. 793, 798 (1996), cited the Restatement and held: "These principles [of res judicata] do not always require one to have been a party to a judgment in order to be bound by it. Most notably, there is an exception when it can be said that there is "privity" between a party to the second case and a party who is bound by an earlier judgment." In *Martin v. Wilks*, 490 U.S. 755, 761-62 (1989), the Court recognized "an exception to the general rule [of identity of parties] when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is not a party."

The settlement agreement between the *Martin* plaintiffs and the intervening class of county boards states that the county boards, including Defendant Butler County MR/DD Board, are bound by the *Martin* Consent Order. In short, as a means to settlement, the intervening boards acquiesced to the *Martin* plaintiffs' position in opposing intervention, and agreed to be bound by the Consent Order. The Consent Order governs the statewide, integrated system of deinstitutionalization, including the state agencies' role in allocating waiver slots and funds to county boards. *Martin* implicated both local and state practices with regards to funding programs and providing integrated community settings for residents of ICFs/MR. To the extent *Martin* did not touch on every conceivable issue regarding the obligations of county boards, such claims arise out of the same operative facts, and the *Martin* plaintiffs had the opportunity to raise claims against the county boards by virtue of their intervention in *Martin*.

As set out above, in *Martin*, Plaintiffs asserted that the Butler County Board of MR/DD has "limited" authority, "circumscribed" by ODMRDD, that the state adequately represented the local board in *Martin*, and that the interests of the state agencies and local boards are aligned. The doctrine of judicial estoppel forbids a party "from taking a position inconsistent with one

successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472-73 (6th Cir. 1988) (citations omitted). "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1217-1218 (6th Cir. 1990). Plaintiff unequivocally argued that the county boards, including Defendant Board, were in privity with the state agencies in *Martin*. The argument was successful, as evidenced by the settlement agreement between the *Martin* plaintiffs and the county boards whereby the boards agreed to be represented by the state agencies and bound by the Consent Order. Judicial estoppel therefore prevents Plaintiffs from now denying that the Board is in privity with the state agency defendants in *Martin*.

Defendant EPI was not a party to *Martin*, but as a recent licensee operating the Fairfield Center on behalf of the Board, it too is bound by the *Martin* Consent Order with regards to deinstitutionalizing residents. For example, Plaintiffs recognize that "EPI cannot unilaterally obtain Home and Community Based Services waivers on behalf of residents of Fairfield Center, it is required under the [request for proposal] to work with Defendant Board and various state agencies to 'develop a specific plan to facilitate [the] downsizing in a manner that acknowledges individual preferences. . . .'" (Doc. 20, Mem. in Opp., at pg. 8). Although no ICF/MR was a party to *Martin*, the record establishes that EPI's duties with regards to community integration are inextricably linked to the Board's duties.

The parties agree that EPI's duty under federal law is to perform a "comprehensive functional assessment" and prepare an individual program plan for each resident that includes a

9

description of "the relevant interventions to support the individual toward independence." 42 C.F.R. §483.330(c)(6)(I). With regard to community integration, EPI's duty is to "work with the Board"; the Board is bound to comply with the Consent Order. The Consent Order provides, among other things, that "ODJFS will conduct a survey of residents of both privately run ICFs/MR and county operated ICFs/MR to determine which of the residents may wish to choose a community placement." These fact establish privity between the Board and EPI for purposes of *res judicata*. *See Vulcan v. Fordees Corp.*, 658 F.2d 1106, 1111 (6th Cir. 1981) ("Federal courts are no longer bound by rigid definitions of the parties or their privies for purposes of applying res judicata or collateral estoppel." Rather, the question is whether the parties' interests are "so closely aligned . . . that they were fairly represented" in the earlier proceedings.)[4] The Court finds that EPI, an ICF/MR owned by the Board, and operating under a license from ODMRDD is sufficiently "closely aligned" with the *Martin* defendants such that *res judicata* bars litigation of the same claims against EPI.

*Res judicata* is a doctrine of finality. Allowing this litigation to proceed would vitiate the conclusion of *Martin* by opening the door to parallel lawsuits against all 88 county boards and multiple county and state-owned ICFs/MR raising the same issues settled in *Martin*.

### *Failure to State a Claim*

Defendant EPI contends that, in addition to Plaintiffs' complaint being barred by *res*

---

[4]Although Plaintiffs correctly state that "no ICF/MR, including Defendant EPI, was a party in *Martin*," the District Court's Opinion and Order on summary judgment discussed ICFs/MR at some length, noting that the state agencies operated twelve such centers. *Martin*, 222 F.Supp. 2d at 953. A state-owned ICF/MR would plainly be bound by the outcome in *Martin* by the nature of its alignment with the state agencies, just as a county-owned ICF/MR is bound by its close connection with the county boards.

*judicata*, Plaintiffs have also failed to state a claim under Section 504 of the Rehabilitation Act. In considering a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the Court must construe the complaint in favor of plaintiff, accept the factual allegations contained in the complaint as true, and determine whether plaintiff has pled enough facts to state a claim that is plausible on its face. *See Bell Atlantic Corp.*, 127 S. Ct. 1955, 1964-65, 1974 (2007); *Ass'n of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

To state a claim upon which relief can be granted, a complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). The plaintiff need not plead detailed factual allegations. To survive a motion to dismiss, however, he is obligated to provide the grounds for his claim with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65.

A cause of action under Section 504 of the Rehabilitation Act requires that the plaintiff show that he or she is: 1) disabled; 2) otherwise qualified for participation in a program that is receiving federal funds; 3) excluded from participation in a program solely by reason of his or her disability. *See Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

There is no dispute that Plaintiffs are disabled within the meaning of the statute, or that EPI receives federal funding. Plaintiffs' Amended Complaint, however, contains no facts supporting the conclusory statements that Plaintiffs would be "appropriately placed in a more integrated community setting." The complaint does not allege that EPI has the authority or ability to move any resident to a community setting. It does not allege that any resident of the

11

Fairfield Center has notified EPI that he or she wishes to be moved, that any community placements are available, or that EPI has withheld placement assistance from any otherwise qualified resident by reason of his or her disability. Although Plaintiffs seek relief in the form of an Order requiring assessment and a community placement plan, the Amended Complaint contains no facts supporting even an inference that EPI has failed to assess Fairfield residents as required by federal law, or that EPI is failing to work with the Board to develop a community integration plan. In short, there are no factual allegations on which to base a viable claim that Defendant EPI is excluding residents from participation in community integration programs by reason of their disabilities, and Plaintiffs have not stated a claim under Section 504 against EPI.

***Failure to Join Necessary Parties***

Defendant Board contends that Plaintiffs' Amended Complaint fails, under Fed. R. Civ. Proc. 12(b)(7), because ODJFS and ODMRDD are necessary parties, and complete relief cannot be afforded in their absence. *See* Fed. R. Civ. Proc. 19(a) (a "required party" is one without whom "the court cannot accord complete relief"). Joinder of these state agencies is prohibited by the terms of the Consent Order in *Martin*, as set out above. Yet, the extensive state and federal laws and regulations governing Medicaid, county MR/DD boards, ICFs/MR, and the record established in *Martin* with regard to the state agencies' oversight of Defendants demonstrate that the relief Plaintiffs seek, if granted only as against EPI and the Board, would be incomplete at best. For example, Defendants EPI and the Board cannot, of their own accord, develop a "comprehensive effective plan that includes timelines and measurable targets to place Plaintiffs from Fairfield Center into community settings . . ." without the input, direction, oversight and approval of ODMRDD, at a minimum. (Am. Compl., at Prayer for Relief). *See, e.g.,* 42 U.S.C.

§1396n, r; *Martin*, 222 F.Supp. 2d at 954 (state waiver program administered by ODMRDD); *see also* 42 C.F.R. §483.410(e); Ohio Rev. Code §§5111.21(A)(2) and 5123.19(B) (ICFs/MR licensed and regulated by ODMRDD); Am. Compl. at ¶¶26, 34 (EPI operating Fairfield under ODMRDD plan requiring downsizing).

Ordering the relief sought by Plaintiffs against the Board and EPI may also subject them to inconsistent judgments and prejudice both the Defendants and the absent state agencies. *See* Fed. R. Civ. Proc. 19(b) (Court is to consider the potential for prejudice when "joinder not feasible"). ODMRDD is in the process of complying with the Consent Order in *Martin* on a state-wide basis, and overseeing the downsizing of Fairfield Center in Butler County. If the Court ordered the Board to implement an independent plan and to perform separate assessments, other than those already required by federal and state law and the Consent Order in *Martin*, there is a serious risk of prejudice. Accordingly, the court finds that "in equity and good conscience" this action cannot proceed without ODMRDD and ODJFS. Fed. R. Civ. Proc. 19(b). Because joinder is not feasible, the case must be dismissed. Fed. R. Civ. Proc. 12(b)(7).

## IV.

For the foregoing reasons, Defendants Butler County Board of Mental Retardation and Developmental Disabilities and Empowering People, Inc.'s Motions to Dismiss under Fed. R. Civ. Proc. 12(b)(6) and (7) (docs. 14, 15) are hereby **GRANTED**. The Court is directed to enter final judgment in favor of Defendants.

**IT IS SO ORDERED.**

\_11-13 -2008\_
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**